Cardinal Motors, Inc. v. H&H Sports Protection USA Inc. Let me ask you about functionality. You have to show that the design is non-functional, correct? Yes, Your Honor. The substantially curved helmet, isn't that a functional aspect? No, not at all, Your Honor. There are plenty of helmets on the market that have faceted sides that are not curved, look like dodecahedrons or something like that. They're out there, they're competing, they work. As long as it provides a barrier for head shock, we've got a functional helmet. Mr. Hondell, can I ask a follow-up question? Didn't the district court judge talk about, and isn't it appropriate to consider, that we might be giving protection to entire categories? Even though there might be a slightly different helmet that doesn't have a curved shape, you're basically cutting out an entire category of helmets, so that there are only so many categories left, so it would be inappropriate to give that protection. Well, we pleaded many designs, which are some very close and some very different, which do not infringe the trade dress. So that helps define and helps provide notice, and will help fashion an injunction, should we get to that point. You've got to look at those two descriptions. There's a detailed description and a more general one, and the more general description has lots of little details that are hardly characterizable, as Your Honor has suggested the court said. For example, such things as a large diameter metallic pivot point to scutcheon. It can be just a point. It doesn't have to be a big circle. A brown leather trim patch. It's not necessary. It's certainly not to be brown, not to be leather. Internal jigsaw puzzle part V-shaped cheek pads. They can be a lot of different shapes, but they have a combination of brown shiny leather and suede leather, and that is in the description of the detailed trade dress. So I could go on ad finitum. The detailed trade dress is quite specific, and we were able to plead that because what this defendant has done is to have copied the design of Plaintiff's Helmet down to the tiniest iota, with the, in our view, the clear intention of giving consumers the impression that the bullet, the original helmet that Cardinal designed, and the accused product come from the same common source, that they're a third-party source product which Bell buys, our licensee Bell Helmets, which they buy and which the defendants buy. They're trying to give people the impression that they're getting the same thing. My law clerk just a week ago had bought some earphones for his iPod, and he looked at it and he said, they're not from Apple, but it's from the same factory. That's what he says to me. That is the evil of not protecting people against such literal copying. And I think it follows under the rubric of trade dress. And, again, when they copied one product so literally, there's complete notice. They know what they did. But you're really relying on the detailed trade dress when you say that, right? I believe that the detailed trade dress is inarguable on the point, and I believe the general trade dress is justifiable and, in fact, correctly enforced. So you've got three minutes for rebuttal. So you're over time now, but we'll hear from Mr. Lane, and then you can respond to him after that. Thank you. Thank you, Your Honor. Good afternoon, Your Honors. May it please the Court. I'm Michael Lane, appearing on behalf of H&H Sports Protection, Inc., who I also represented below. I'm joined by Stefan Savage and his partner, Justin. I agree. When you look at the photos of the two helmets side by side, they are virtually identical. I disagree. All right, let me not say virtually identical. They are very, very, very close. What do we do with that? Does that matter? Does it not matter? I would tell you that two things, and we briefed it in length below, but there are significant differences and meaningful differences between the bullet and the torque, and those are cited at A144 in the record. More importantly, I think, though, what we're dealing with in this case is we're dealing with the competing interests in trademark law, protecting consumers and trademark owners from source confusion. I don't think we need to get to that level of generality. I'd like to just have you focus for a moment on the detailed trade dress. It seems to me that that's a fairly specific set of descriptions that the district court basically just said, I'm not even going to get to this because it has some of the same ones as the general trade dress that I've already ruled on. That's not the proper way to do this, is it? You have to look at all the descriptions as a whole, right? I believe you do have to look at the description as a whole. In certain instances, that makes sense. And in this instance, the detailed trade dress included all of the imprecise descriptors that the general trade dress included. Well, it included a series of other highly specific ones. It did. And so it just seems to me it's hard to imagine that the detailed trade dress could be used to describe really anything other than the bullet helmet and maybe your helmet. Do you think that's wrong? I do think that's wrong. With all the criteria that are in this description? I think that the detailed features that are described are not pled as distinctive at all. They're simply saying that these features exist in two helmets. They're not comparing that to third-party helmets at all. For all we know, every market or every product in the marketplace contains those exact same features. Metallic border lines, you know, helmets with cheek pads shaped to, you know, accommodate the ear hole. So, no, I don't brown leather arc seconds. You're saying at the pleading stage, they have an obligation to demonstrate the lack of third party? I think at the pleading stage, they have an absolute responsibility and an obligation to plead distinctiveness with respect to all of the elements of their helmets, not just several, not just a couple. And I don't think brown can possibly be distinctive for a helmet inside because I know. You're picking sort of one thing and saying that's not distinctive. The point is, if you take 30 things and say they're all together, the description, well, then it's harder to argue that this is not sufficiently distinct. I understand that argument. But the only way that I can respond is that if those distinctions, those descriptions are functional in nature or not distinctive in the marketplace, and they have to be. Well, I'm going to leave out functionality because the district court didn't do anything with respect to functionality. I mean, are you asking us to sort of take, to do what the district court didn't and to just get to functionality and the other factors? Absolutely not, Your Honor. And I do believe the court did specifically reference the combination of these features being nondistinctive and functional. There are portions of the court's opinions below where they speak specifically about the functionality of certain of these features. You're right, though. You're right. He did not reach the detailed trade dress because it included all of the general trade dress that had all of those descriptions that were necessarily overbroad. The pleading itself never contained any comparison of those distinctive or the detailed trade dress, quote, unquote, which, by the way, was pled in the alternative, which in and of itself begs the question whether or not Cardinal understands what its own trade dress is. How can my client understand what's off limits? How can consumers understand? Why does pleading in the alternative mean they don't understand their own trade dress? Because by definition, trade dress has to be distinctive, which requires a unitary look, a single look. That is the way it works. That's what distinctiveness means. It means to consumers, hey, wait a second, when I see this feature, it means Cardinal. Can a combination of nondistinctive individual elements be combined in such a way that the combination is distinctive? That is absolutely true. It's in the case law. There's no question. But what I would argue is even if you're combining these, what I consider to be either functional or nondistinctive elements, they have to be still shown on the pleadings, on the face of the pleading, to be distinctive. And in this instance, the detailed trade dress description includes no comparison whatsoever with any other helmet marketed by any other company. Is that for the district court to determine in the first place? It is. And the district court never reached that because it included a general trade dress description that was so general and so high level that it couldn't reach the rest of it. It just didn't meet that first hurdle. So aspects of the description certainly are general, very general, you know, a curved top helmet. But when you put them all together, there's so many points. Why isn't that enough to meet the first requirement of a detailed description? To give you an example, if I was to plead trade dress on behalf of Levi's Jeans, and I was to say my client owns Levi's Jeans with a flared leg, one of those old school 70s kind of retro looks with a big opening at the bottom that are now back in style, and I was to describe every detail of that jean, the seams, the opening, the tapered look, the belt loops, the, you know, the waistband. Those are included in all jeans. And so there is functionally, in my opinion, Your Honor, no difference between Levi's owning a flared jean that was, you know, described down to an infinitesimal degree in this particular case. But what, so just to take your example, though. Yes. Just to date myself. If you go back and you put the little Levi tag in the corner there, I know the tag itself says Levi, and that's a logo. But the existence of a tag, would that be a sufficient level of detail to make it distinctive? A hundred percent. In fact, that red, that is a case that was decided, I believe, in this circuit. That red tag means something. But then why isn't it the case that the additional detail. Because your argument seems to be that because we have this very general trade dress, you can't put on other more detailed, that precludes the detailed trade dress from having protection. But by your own example, if you have a more detailed level, a more detailed put on top of a general trade dress, maybe it does. I would state that differently. I would say, and the court said it below, that even when you plead a detailed trade dress, just like the plaintiffs in Fun Boy did, that description is this long. It includes the same features that are included in any swan pool toy or any bird-derived pool toy. I would say that the difference between Levi's red tag or Louboutin's red sole or the Tiffany, you know, Robin's egg blue box is trade dress at its heart. In this particular instance, there is nothing in the complaint that could tell anyone that a brown, you know, inner feature is distinctive. Look, I mean, I think you've got great arguments for functionality and likelihood of confusion, etc. But the district court ruled at the first step of this with respect to both descriptions. And so you keep sort of harping on single aspects of the description that are generic. I would say that even if you added all of those descriptions together, that you would still get a generic combination. In fact, it is an aggregation of predominantly functional features, just like it was described. I mean, that's a failure then to meet the functionality requirement. I mean, I think you're again conflating them, aren't you? No, because I think what we're dealing with is distinctiveness, which is being measured by, as Your Honor described earlier, kind of that intersection of both functionality and distinctiveness. If you have products like Traf-X, Traf-X, the four legs, the sign, the base, the stand. It was the, you know, it was that kind of that feature in the middle of spring. That was the distinctive feature, if it was anything, and even that was functional. And the court said, hey, listen, you add all these things up, it can't possibly be distinctive. All functional features, add them together, it can't be distinctive. And I'm not advocating for a law that changes anything that's out there. I'm trying to work within the confines of the laws that exist. And my belief, my sincere belief, and I believe Judge Crotty believed the same thing, is you can put together a laundry list of items. You can say that all of these things add up to a very specific, detailed, or I'm sorry, a very detailed trade dress description. But a detailed trade description is not the same thing as a precise description of what is distinctive. That is the difference in this case. And I submit to you that the court got it right below. And we ask that this court affirm the opinion below in all respects. Thank you, Mr. Lane. Thank you, Your Honors. Put your hand out. You have three minutes for rebuttal. Yeffily has conceded that an aggregation of nondistinctive elements can be distinctive and can function as a trade dress. But unless the elements are so nondistinctive, there's no legal authority. The authority is a combination of distinctive elements can function as a trademark. Counselor, even assuming that it's true, are you able to hear me? Yes. Even assuming it's true that the aggregation theoretically and aggregation could be distinctive, the argument here, as I understand it, is you have an aggregation of nondistinctive features. And, therefore, the whole is not more than the sum of its parts. And, therefore, here the aggregation is nondistinctive. How do you respond to that argument? The law is to the contrary, Your Honor. How is the law to the contrary? The holdings are that an aggregation, a combination of nondistinctive features, can be distinctive. It's that clear. And it makes sense. Hold on. It makes sense. Jasmine, the clock is on. Oh, sorry. Okay. Go ahead. I'm sorry. Is there a question pending?  I didn't know if you had finished answering the question. Yes, I have.   So, I guess I have a question for you, Mr. Handel. If we were to agree with you, at least with respect to the detailed trade dress, do we need to send it back to the district court or can we just take a look at the pleadings here to figure out whether you've even made a claim, a liable claim, on the other aspects of the trade dress that it required, functionality in particular? Can we do that from the pleadings? I think the court can assess functionality from the pleadings, yes. Yes, I can. And just our trade dress says a narrow, and I'll just tell you one thing, it says a narrow chin bar and a wide eye port. And, in fact, a narrow eye port would give the eyes more protection and the face more protection, and a wider chin bar would have more strength and give the chin more protection. So, I mean, it's clear that changing the trade dress, and that would avoid infringement. The things you just said, don't they relate to functionality? Yes, that's my point. The trade dress is such that you could change it from the trade dress and get something that would give better protection for the chin and better protection for the eyes. So it's obviously not a functional trade dress. I have to say, I mean, I found some of this to be almost gibberish. I didn't know what a thin chin bar height means. Oh. What is a thin height? Well, right now I wish I had a helmet. Well, tell me what a thin height is and compare it to a thick or a fat height. Oh, okay. You've got to look at the pictures, and it's clear. The Cardinal helmet has a narrow and a very wide opening for the eye, a narrow chin bar, and then the other one is completely different. The other competitive products show all different variations in size. So, in your view, thin height is the same as narrow? No, it's the trade dress is wide, opening for the eyes, and narrow bar to protect the chin. If you wanted to avoid the trade dress, you would have a wide bar to protect the chin and a narrow opening for the eyes. That would give the eyes more protection and put more strength in the chin bar, and it would be the opposite of the claimed trade dress. My point is I think that this description uses words that are not necessarily precise, and that is somewhat problematic. I think you're doing a better job in oral argument than the complaint does in describing various features of the helmet. Well, we also pleaded that they were within a certain percentage range. The infringement was the accused product was in a certain percentage range of the original, so we do have those in there which combined to give notice, and we do have the pleading of competitive products which are non-infringing, and that does a pretty good job, I think, of pointing the way to non-infringement. It's not yes. I'm sorry. I don't want to interrupt you. Go ahead. Finish. You can finish. Yeah, I was going to say you could just look at the two helmets. One is an identical copy of the other as far as unless you really look really closely. I understand we're already probably over time, but just one quick question. In response to the question, you said that we're talking about functionality. Doesn't functionality mean it has a function as opposed to how good it is at its function? So you seem to be arguing that because one design of the product might function more efficiently than a different design because we chose the less efficient design, it's not functional. Isn't functional functional because it does something as compared to ornamental or fanciful? Well, your honest statement is correct, and other cases have added to that that if it does something better, competitors should be entitled to do a product which does something better, and therefore this comparative idea that I brought in begins to get in. In other words. Yes, but that doesn't make it non-functional. No. It doesn't, but it is an issue of functionality, better functionality. In other words, if we tried to get a trademark on a design which was the only way to get the best possible helmet, that would not be kosher. Right, but if it was one of five ways to get the best possible helmet, it might not be kosher either, right? No, if there's five ways to get the best possible helmet and the trade dress reads in only one of them, then competitors have the option to do the other four, turn out a completely functional and competitive product. Consumers get a competitive product at a good price, et cetera. So this comparative idea of functionality is, I think, a good one, and it's in the cases. All right. Well, thank you both. We will reserve decision.